**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WAYNE HOUSTON,

    Plaintiff,

v.                                               Case No. 06-CV-10140-DT

DANIEL BUFFA, et al,

    Defendants.

                                          /

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Pending before the court are two motions for summary judgment: a January 3, 2007 motion filed by Defendant David Gillahan and a January 30, 2007 motion filed by Defendants Daniel Buffa, Brent Yuchacz and Jill Kulhanek. The matters have been fully briefed, and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, both motions will be granted.

**I. BACKGROUND**

Plaintiff Wayne Houston alleges two causes of action against Defendants Gillahan, Buffa, Yuchacz and Kulhanek (collectively, the "Officers"), both under 42 U.S.C. § 1983. Houston asserts claims for excessive force and, additionally, for false arrest and false imprisonment arising out of events which occurred on January 27, 2003 at the Club Devine in Ypsilanti, Michigan. (Compl. at ¶ 7.) Specifically, Houston contends that, upon arrival at Club Devine, the Officers almost immediately executed a false arrest by handcuffing Houston and escorting him to a back room for questioning. (*Id.*; Pl.'s Dep. at 57, Pl.'s Ex. A.) Houston further asserts that, after arriving in the back

room, while still handcuffed, Houston was beaten by Defendant Buffa, while the other Officers watched and failed to intervene. (Pl.'s Dep. at 61-62.) Houston contends that after he was assaulted, he was placed in a patrol car and taken to the Ypsilanti Police Station. (*Id.* at 15-17, 65.)

Houston was eventually charged with and convicted of Interfering with Police, in violation of City of Ypsilanti Ordinance No. 74-32.

At the criminal trial, the prosecution presented only one witness, Officer Gillahan, who is now a defendant in this action. Gillahan testified that on January 27, 2003, the Ypsilanti Police Department received a call that there were two black males, one wearing a white turtleneck and one wearing a black turtleneck, black leather jacket and a gold chain, selling drugs at the Club Devine. (Tr. at 72-73.) When the Officers arrived at the club, the security guard told them that the confidential informant who made the call was waiting for the Officers at the neighboring club. (*Id.* at 73.) The Officers met with the informant, who gave the same description of the suspects, and said he had seen them selling drugs. (*Id.* at 74.) Gillahan and Buffa observed a black male wearing a black turtleneck, black leather jacket and a gold chain, who turned out to be Houston. (*Id.* at 75.) Gillihan testified that they made contact with Houston and asked if they could talk with him, to which Houston consented. (*Id.*) They then asked if they could talk somewhere "out of the fray," because they were standing outside of the restroom and near the dance floor. (*Id.*) Houston initially consented, and began walking with the Officers. Gillihan testified that "at that point, for whatever reason, he decided that he, he must of [have] changed his mind, but he got really belligerent with us." (*Id.* at 75-76.) When the Officers said that they just wanted to talk to him where they were out of the

2

way and then they would send him on his way, "that's when he turned on Officer Buffa and he got into a fighting stance and he actually elbowed him in the chest." (*Id.* at 76.) The Officers then attempted to handcuff him, and he was informed that he was under arrest for interfering. (*Id.* at 77.) Due to Houston's aggressive behavior, the Officers were unable to handcuff him and instead had to escort him to the back room. (*Id.*) Gillihan further testified that, once in the back room,[1] Houston continued to use profanity and be aggressive. (*Id.* at 78.) He was still not handcuffed, and was told to put his hands on the wall. (*Id.*) Houston refused to comply with their instructions and, though he was now up against a wall, kept trying to twist his body around. (*Id.* at 78-79.) Houston was pushing his body away from the wall and the Officers were trying to hold him against the wall. (*Id.* at 79.) The Officers eventually put him on the ground and placed handcuffs on him. (*Id.*) Gillihan testified that "at that point, we were, the arrest was based on the interfering." (*Id.*) Houston was then pattend down, placed in the patrol car, and took him to the police station. (*Id.* at 80-81.) According to Gillihan, throughout this process, Houston was spitting at Buffa, and continued his verbal assaults. (*Id.* at 80-81.)

Following the close of the prosecution's case-in-chief, Houston's attorney moved for a directed verdict, arguing that the evidence did not show that the Officers had a right to stop Houston upon their arrival at the club. (Tr. at 98.) Houston's attorney argued that the Officers executed an illegal seizure of Houston, and therefore Houston had a right to resist. (*Id.* at 100-01.) The prosecution responded that the "[p]olice

---

[1] At this point the Officers were joined by Kulhanek and Yuchasz, the other two defendants to the current action. (Tr. at 78.)

officer[']s actions did not, did not rise to that of an arrest, nor a *Terry*[2] stop at that point . . . [Houston] started shoving Officer Buffa before they ever got to the back room, before they had exercised any dominion control ah, over [Houston]." (*Id.* at 101-02.)  The prosecution stated that "I'm arguing there is no seizure, no arrest, no *Terry* stop to that point. . . . [T]he difficulty with the defendant's position, with his argument, is that his freedom was never, his freedom to walk away was never restrained . . . prior to his resisting or interfering with the arrest." (*Id.* at 103.)  Houston's counsel replied that Houston was not free to leave, but rather his freedom was restrained. (*Id.* at 103.)

The court found that, viewing the evidence in a light most favorable to the prosecution, the jury could find that Houston voluntarily consented to talk with the police officers. (Tr. at 104.)  The court also stated that the evidence suggested that, after he had willing gone with the Officers, he engaged in a fighting stance and resisted "[n]ot for the arrest, but for their investigation.  He wasn't even charged with an arrest.  He wasn't resisting a lawful arrest, 'cuz he had willingly gone with the officers." (*Id.* at 105.)  The court further stated:

> [W]e are not just dealing with nothing to arrest.  We are dealing with nothing, to police encounter, to detention stop, before we even get to anything involving an arrest.  The arrest part under this testimony came after he resisted the officers by adopting a fighting stance and apparently elbowing one of the officers.  Ah, and that is now a misdemeanor being committed in the presence of the officer.  Whether they charge him with assault, whether they charge him with resisting is up to, of course, the Prosecutor and not the officers.  But, did they have probabl[e] cause to believe that he was now interfering with them?  From that testimony, yes.  Now, then he was arrested.  So the rest of this, ah, after that, if he was resisting arrest and they were arguing that ah, that information was what they're charging him for, after he was arrested, his activity.  Then that

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

4

> would be resisting arrest and then the issue would come if it was lawful or not.
>
> Clearly, um, what they have done this time is; was it lawful for them to approach and ask to speak with him? Yes. Ah, did he then act in a way, if believed by the jury, and the testimony, that was resisting. Ah, from the testimony and the light most favorable to the People, yes.

(*Id.* at 106.)  The motion for a directed verdict was denied.  (*Id.*)

The defense presented four witnesses, but only Houston's testimony will be summarized here.  Houston testified consistent with his current allegations in this case.  Houston asserted that he was on the dance floor of Club Devine when two male police Officers approached him, asked him his name, and then told him that he was under arrest.  (Tr. at 142, Def. Gillahan's Ex. A.)  The Officers then handcuffed Houston and led him to a back room at the club.  (*Id.* at 143.)  Once in the backroom Houston asked the Officers a question, which prompted one of the Officers to strike him in the face, while he was still handcuffed, and slam him, face first, into a wall.  (*Id.* at 143-43.)  According to Houston's testimony, the officer then pulled Houston back, forced him to the ground and put his knee in Houston's back.  (*Id.* at 144.)  Shortly thereafter, Houston was taken to the patrol car, and then to the police station.  (*Id.* at 144-45.)  Houston testified that he never hit, swore at, or spit on any officer, stating "I didn't do anything.  I did not resist, I just, I knew I hadn't did [sic] anything, so I was just, you know, going to remain calm."  (*Id.* at 144-45.)

After the close of proofs, Houston's counsel requested that the court instruct the jury on the right to resist an unlawful arrest.  (Tr. at 164.)  The court found that there were two issues with the requested instruction.  First, the court stated that "the charge itself is not one of, that he resisted a lawful arrest.  They are not bringing any charges,

5

that once he was under arrest that he resisted.  Or that, once he was trying to be placed under arrest, that he resisted." (*Id.* at 166.)  The court further stated that "[w]hat they are charging him with is interference prior to the arrest, when he was walking back to the location." (*Id.*)  The court continued, however, to state that there was evidence that Houston "was not given any chance of walking down the hall." (*Id.*)  The court found, therefore, that there was an issue of fact and the court would have to "look at the defense" in order to see if the jury instruction was appropriate.  (*Id.*)

The court then concluded, however, that the instruction was not consistent with Houston's defense.  (*Id.* at 166.)  If Houston's defense had been that he resisted an unlawful arrest, then the court stated it would give the requested instruction.  (*Id.*)  The court found that Houston had not presented such a defense and the jury instruction was therefore irrelevant.  The court explained:

> The testimony from [Houston] was, he did not resist in any way.  That he did nothing.  Now I'd be giving an instruction to say that, well if you had done something, it was okay.  And it was a defense.  But that's not what he stated occurred.  He stated he did not resist in any way.  It didn't happen.  He did not resist in any way.  It didn't happen.  He did not resist.  And the defense is now, from the defendant's own lips, that this did not happen.  It did not happen the way it happened with the police, I was just cuffed and taken out of there.  I didn't resist in any way, so I did not interfere with them.  That's the defense that has been presented.

(*Id.* at 166-67.)  After noting that none of Houston's witnesses stated that he was struggling or resisting in any way, the court declined to give an instruction that was, in effect, meaningless or irrelevant.  (*Id.* at 167.)  The court, therefore, based its ultimate conclusion on the fact that Houston's defense was not that he was resisting an unlawful arrest but that he did not resist at all.  (*Id.* at 167-68.)

6

This defense was again stated in Houston's attorney's closing argument.  During his closing argument, Houston's attorney essentially attacked the credibility of the prosecution's version of the facts.  (Tr. 197-203.)  Similarly, the prosecution attacked the credibility of Houston and his witnesses.  (*Id.* at 193-197.)

The court then charged the jury with the elements of Interference with Police, which the court explained, has eight elements which must be proven beyond a reasonable doubt:

> First, that the defendant obstructed, resisted, hindered, opposed, assaulted, beat or wounded any police officer by, including but not limited to, interfering with the arrest of another person by the officer, obstructing the officer's path, throwing objects at the officer, inciting others to obstruct, resist, hinder or oppose the officer, and the use of fighting words, obscene words or gestures.
>
> Second, that the person the defendant interfered with was then a police officer.
>
> Third, that the defendant knew then that the person was an officer of the law.
>
> Fourth, that the officer was then carrying out lawful duties.
>
> Fifth, that the defendant knew that the officer, knew that the officer was doing so.  Carrying out lawful duties.
>
> Sixth, that the defendant intended to interfere with the officer.
>
> Seventh, the words or actions of the defendant in fact interfered with the officer in carrying out those duties.
>
> Eighth, that the defendant was in the City of Ypsilanti.

(Tr. at 212-213.)  The jury found Houston guilty of Interference with Police.  (Tr. at 221.)

Houston appealed to the Washtenaw County Circuit Court, which affirmed his conviction.  (Pl.'s Ex. G.)

7

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of a factual dispute alone, does not, however, defeat a properly supported motion for summary judgment -- the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (emphasis and alteration in original)).  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner

most favorable to the nonmoving party.  *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'" (citation omitted)).  The court does not weigh the evidence to determine the truth of the matter but to determine if the evidence produced creates a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

To prevail on a claim brought under 42 U.S.C. § 1983, Houston must prove that the Officers acted "under color of law" and that their conduct deprived Houston of a right, privilege, or immunity secured by the Constitution or the laws of the United States.  42 U.S.C. § 1983; *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003); *Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir. 1999).  The Fourth Amendment provides for the "right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ."  U.S. Const. Amend. IV.  It is "clearly established that an arrest without probable cause violates the Fourth Amendment."  *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997) (citing *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964)).  Excessive force claims are also evaluated under the reasonableness criterion of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004).  Determining whether the force used to make a particular seizure is reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests."  *Graham*, 490

U.S. at 396.  "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.'" *Gaddis*, 364 F.3d at 772 (quoting *Graham*, 490 U.S. at 396).

In this case, the Officers assert that both Houston's false arrest claim as well as his excessive force claim are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Court held:

> [I]n order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87 (footnote omitted).  Thus, a claim for damages under 42 U.S.C. § 1983 is not cognizable if it would imply the invalidity of a prior conviction that has not already been invalidated.  *Id.* at 487.

The court finds that, applying the rule of *Heck* to the facts of this case, Houston cannot proceed on either of his claims under § 1983.  The fourth element of Interference with Police, as charged by the trial court, is that "the officer was then carrying out lawful duties."  (Tr. at 213.)  In order to proceed on either of Houston's claims, he would have to negate one element of the offense, thereby calling into question the validity of his conviction.

In Houston's underlying criminal trial, the parties presented two competing versions of the events of January 27, 2003.  Under Houston's version, the police officers

10

arrived at the club and immediately, without explanation, rationale or probable cause, placed him in handcuffs, took him into a back room and, without any provocation or motivation whatsoever, proceeded to beat him while he was still handcuffed. This is the exact factual scenario upon which Houston's § 1983 claims are based. Conversely, under the prosecution's version, Houston initially consented to speak with them in a back room but, on the way to the room, Houston began an altercation which essentially did not end until the police eventually got him to the back room and, after continued struggle, placed him in handcuffs and took him to the station. This is the exact factual scenario upon which the Officers' § 1983 defense is based.

Because one of the elements of the Ypsilanti Ordinance for Interference with Police is that, when the accused "interfered," the officer was then carrying out lawful duties, (Tr. 213), the jury must have accepted the Officers' version of events. Thus, in order to find Houston guilty of interference, the jury had to find that the Officers, in carrying out their duties, were neither executing an *unlawful* arrest nor using an *unlawful*, or unreasonable, amount of force.

Moreover, arguments related to what was actually argued in the criminal trial are, to some extent, irrelevant under *Heck*. The salient question is not necessarily what defense was actually raised, only what defense could have been raised. Even in "no contest" pleas, courts have held that subsequent § 1983 actions are barred if they will imply the invalidity of the conviction. *See Cummings v. City of Akron*, 418 F.3d 676, 683 (6th Cir. 2005) ("Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge."); *Phelps v. City of Akron*, No. 5:04 CV 2490, 2006 WL 2945947 (N.D. Ohio Oct. 13, 2006)

11

(finding that no contest plea entered in state court "is given issue preclusive effect to estop plaintiff from asserting in federal court that defendant police officers acted without probable cause in arresting and imprisoning him in an action brought under § 1983"). What is relevant here is that Houston *could* have raised both excessive force and false arrest as defenses to his Interference with Police charge because either theory, if proven, would negate an element of the offense (the lawfulness of the Officers' duties).

Indeed, contrary to Houston's current arguments, he did directly challenge the lawfulness of the Officers' actions. He argued to the court that the initial questioning of the Officers constituted an unlawful arrest or, at least, an unlawful *Terry* stop. He also argued to the jury that the Officers' actions were improper, attacking the Officers for allegedly handcuffing him, dragging him into the back room and beating him. (Tr. at 199-202.) Thus, not only did Houston challenge the lawfulness of the alleged handcuffing and "arrest," but also the lawfulness of the degree of force used, arguing that the Officers' force was unreasonable (and that their denial of the use of that force was unbelievable).

Finally, Houston's assertion that he was prevented from presenting the defense that he can resist an unlawful arrest is not correct. The trial court refused to instruct the jury on the defense because Houston had not presented facts to support the theory. As the trial court explained, Houston's defense was essentially that he did nothing at all, and it would have been improper to instruct the jury, with no factual support, that *if* he had done something, it *would have been* proper if the Officers' were conducting an

unlawful arrest.[3] Houston was not prevented from presenting the defense that the Officers' conduct was unlawful. He was only denied a jury instruction because it was inconsistent with the defense he actually presented.

Houston's implicit argument, found throughout his brief, is that the trial court improperly denied him the opportunity to litigate the legality of the Officers' conduct. Although the court rejects the factual basis for this argument (the trial court, if anything, limited the *way* in which he could present this defense, rather than preventing him the opportunity to present it at all), this argument is the very reason why Houston's § 1983 claims must not proceed. Even it the trial court did erroneously prevent Houston from presenting a valid defense to his conviction, *Heck* prohibits the correction of that error through the litigation of a § 1983 action. The proper vehicle to challenge a conviction is through the state's appellate procedure and, if that fails, habeas review under 28 U.S.C. § 2254. *Heck*, 512 U.S. at 486 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution."). The essence of *Heck* is that one cannot collaterally attack a criminal conviction through a § 1983 action. Because this is exactly what Houston is attempting to do, his § 1983 action cannot proceed.

### A. False Arrest

---

[3]Although it is a technical point, Houston's proposed jury instructions also related to a crime, resisting arrest, for which he was not charged. Although Interference with Police is *similar* to resisting arrest, it is not identical.

13

There can be no serious argument that Houston's false arrest allegation was not litigated and determined during the criminal trial. Indeed, it formed the basis of Houston's directed verdict, which was denied because the court concluded that there was evidence upon which jury could conclude that Houston voluntarily went with the Officers to the back room and that the Officers' actions in first approaching Houston at Club Devine therefore did not amount to an unlawful arrest. (Tr. at 104-06.)

Houston attempts to avoid *Heck* by arguing that he is specifically only challenging his initial questioning, and alleged handcuffing, by the Officers. (*See* First Am. Compl. at ¶ 14.) Houston claims that he is not challenging his eventual arrest (for which he was convicted), only his initial, unlawful, arrest.[4] The court considers this claim a distinction without a difference. The jury convicted Houston of Interfering with Police, and Houston cannot now challenge (1) whether the Officers had probable cause to arrest him or (2) whether the Officers' questioning was otherwise unlawful. As the court stated in *Phelps*, "[l]iberally construing Phelps' arguments, he claims the facts did not warrant making the initial *Terry* stop let alone probable cause for arrest or that probable cause developed from the initial unlawful *Terry* stop. However, either theory places probable cause to arrest in jeopardy." 2006 WL 2945947 at * 3; *see also Liston v. Steffes,* 300 F. Supp. 2d 742, 750 (W.D. Wis. 2002) ("If either or both plaintiffs were convicted of a crime arising out of the February 3 arrests and their convictions would be put into doubt if this

---

[4]It is a little unclear to this court how, factually, Houston would prove such a claim to the jury. His claim is that he was immediately handcuffed by the Officers, beaten, and taken to the police station, without ever being released. Under this factual scenario, there can only be one "arrest," which would have occurred at the moment he was handcuffed.

14

court was to decide that the initial stop of their car, the search of the car or the administration of a preliminary breath test was illegal, they would be barred from bringing this challenge by *Heck.*").

Further, for the reasons stated above, the court rejects Houston's argument that he was not allowed to challenge the legality of the arrest because the trial court rejected his proposed jury instructions on the right to resist an unlawful arrest. Houston also argues to no avail that such a defense is prevented under Michigan law because Michigan law no longer recognizes a right to resist an unlawful arrest. Under former Michigan law, "the right to resist an unlawful arrest was, in essence, a defense to the charge of resisting arrest, because the legality of the arrest was an element of the charged offense." *People v. Ventura*, 686 N.W.2d 748, 750 (Mich. Ct. App. 2004). Michigan law changed in 2002, however, when a new resisting arrest statute was enacted, which does not require that the arrest be lawful but, instead, that the officer be merely performing his duties. *Id.* (citing Mich. Comp. Laws § 750.81d). The Michigan Court of Appeals has held that the lawfulness of the arrest is no longer an element to the crime and therefore a citizen no longer has the right to resist an unlawful arrest. *Id.* at 751. Houston, however, was not charged with a violation of Mich. Comp. Laws § 750.81d, but instead with a violation of City of Ypsilanti Ordinance No. 74-32, which specifically requires that the officer be carrying out "lawful duties." Thus, it is a valid defense that the officer was engaged in unlawful duties, whether they be effectuating an unlawful arrest or exercising unlawful force.

### B. Excessive Force

In *Heck,* the Supreme Court gave an example of an attempt to recover damages, not for an allegedly unconstitutional conviction, but for "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," which is also barred by the rule announced in *Heck.* 512 U.S. 487. Specifically, the Court stated:

> An example of this latter category--a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful--would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense. *See People v. Peacock*, 68 N.Y.2d 675, 505 N.Y.S.2d 594, 496 N.E.2d 683 (1986); 4 C. Torcia, Wharton's Criminal Law § 593, p. 307 (14th ed. 1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning *res judicata*, see n. 2, *supra*, the § 1983 action will not lie.

*Heck,* 512 U.S. at 487 n.6. Contrary to Houston's argument, the court finds that this footnote directly addresses the situation before the court. If Houston were to prevail on his excessive force claim, it would call into question the validity of his Interference conviction. *Hudson v. Hughes,* 98 F.3d 868, 873 (5th Cir. 1996) ("Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that [the officers] used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer."). The *Hudson* court explained that this is because "whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction." *Id.* Similarly,

16

here, whether the Officers used an unlawful amount of force depends on Houston's interference, which in turn depends on the lawfulness of the Officers' actions.

It is true that courts have consistently allowed § 1983 claims arising out of allegations that the excessive force occurred *after* the arrest. *See, eg.*, *Schreiber v. Moe*, 445 F. Supp. 2d 799 (W.D. Mich. 2006) (allowing excessive force claim, limited to those allegations of excessive force after the § 1983 plaintiff was in custody and placed in police car); *Potvin v. City of Westland Police Dept.,* No. 05-70291, 2006 WL 3247116, *9 (E.D. Mich Nov. 7, 2006) (recognizing that *Heck* does not bar excessive force claim occurring after the § 1983 plaintiff had been arrested). Courts also allow excessive force claims for events occurring in effectuating the arrest where the lawfulness of the arrest was not an element to the underlying criminal conviction. *See Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997) (allowing excessive force claim despite resisting arrest conviction because "[u]nder Kentucky law, the offense of resisting arrest does not require a finding that the police officers did not use excessive force in effecting the arrest").

Neither of these situations is present in this case. As explained above, the lawfulness of the Officers' actions is an element of Interference with Police. Further, despite Houston's arguments to the contrary, his claims of excessive force do not arise from actions which are alleged to have occurred after his arrest. The problem with Houston's argument is that he asserts that the moment of arrest occurred when the Officers first approached him and allegedly handcuffed him. Houston therefore argues that anything that occurred after that moment can form the basis of an excessive force claim without disturbing the Interference conviction. Under both *Heck* and rules of issue

preclusion, however, Houston cannot sustain such a theory. In his criminal trial, the jury necessarily rejected the argument that Houston was unlawfully handcuffed (and arrested) immediately, and necessarily accepted the Officers' version of when the arrest occurred.

Under the Officers' version, as Houston was walking to the back room, he began a struggle with the Officers, who then tried to arrest him. The struggle continued as they made their way to the back room up until the moment that Houston was finally placed in handcuffs and subdued.[5] There is simply no allegation made and no evidence presented, either by Houston or the Officers, that any force was used by the Officers after they had him on the ground, handcuffed and placed in custody.

These facts are nearly identical to those presented in *Cummings*, where, after the officers gained entry into the § 1983 plaintiff's house, a struggle ensued wherein the officers attempted to arrest the plaintiff and he resisted. *Cummings*, 418 F.3d at 679-80. The struggle moved from inside the house to the front porch and did not end until the § 1983 plaintiff was finally subdued, handcuffed and taken into police custody. *Id.* at 680. The Sixth Circuit held that "[t]he struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined." *Id.* at 682-83. The court held that *Heck* therefore barred the excessive force claim because its success would necessarily imply the

---

[5]Indeed, there was evidence presented that Houston persisted in his unlawful interference even after he was placed in the patrol car when he allegedly continued to spit at the Officers. (Tr. at 80-81.)

invalidity of the underlying assault conviction. *Id.* at 682.; *see also Smith v. Canterbury*, No. CV 104-170, 2006 WL 717151, *4 (S.D. Ga. Mar. 15, 2006)*.

In *Smith*, the § 1983 plaintiff was convicted of obstructing a police officer, which, similar to the conviction at issue here, includes an element that the officer is obstructed in the "lawful discharge" of his duties. *Id.* at 3. The court held that the subsequent § 1983 action for excessive force was barred by *Heck* because "if plaintiff were to prove here that [the officer's] use of force constituted an unlawful discharge of his official duties, the finding would necessarily imply the invalidity of plaintiff's prior conviction for obstruction." *Id.* In so finding, the court rejected a similar argument which is made in this case:

> Plaintiff contends that if he "were to prevail in his claim for excessive force, his conviction for misdemeanor obstruction would not be invalidated, as it is supported by actions of the plaintiff from the beginning of the underlying incident, when he fled for example, to its end." The obstruction offense, however, was based on the ongoing conduct of plaintiff and defendants. While plaintiff's act of obstruction began before he entered his vehicle, his criminal conduct did not end until he surrendered to defendants. The elements of obstruction had not yet been consummated when plaintiff entered his vehicle because defendants were still discharging their duty to arrest plaintiff in a lawful manner and defendant was still fleeing from them.

*Id.* (internal citations and footnote omitted). Similarly, the allegations made at the underlying criminal trial in this case is that Houston's interference began during the journey to the back room and his criminal conduct did not end until he was subdued and handcuffed in the back room. The court therefore finds the reasoning of the *Smith* court persuasive, applicable and, even more importantly, mandated by the Sixth Circuit's holding in *Cummings.* As in *Cummings*, the struggle between Houston and the Officers, which began on the walk and did not end until Houston was subdued and placed in

19

custody, gives rise to both Houston's interference conviction and the excessive force claim. *See Cummings*, 418 F.3d at 682-83. The court therefore finds the excessive force claim is "inextricably intertwined" with the underlying conviction and barred by *Heck* because its success would necessarily imply the invalidity of the underlying assault conviction. *Id.* at 682; *see also Schreiber*, 445 F. Supp. 2d at 814 (barring portion of excessive force claim arising from the struggle between the § 1983 plaintiff and the officer because the underlying "conviction was inextricably intertwined with the excessive force claim such that success on the constitutional claim would imply the invalidity of the state court conviction.").

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant David Gillahan's "Motion for Summary Judgment" [Dkt. # 35] and Defendants Daniel Buffa, Brent Yuchaczm and Jill Kulhanek's "Motion for Summary Judgment" [Dkt. # 40] are GRANTED.

A separate judgment will issue.

                  S/Robert H. Cleland
                  ROBERT H. CLELAND
                  UNITED STATES DISTRICT JUDGE

Dated: March 30, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 30, 2007, by electronic and/or ordinary mail.

                  S/Lisa Wagner
                  Case Manager and Deputy Clerk
                  (313) 234-5522